# Levi Huebner & Associates, PC
## Attorneys and Counselors at Law

488 Empire Boulevard, Suite 100
Brooklyn, NY 11225
Tel: **(212) 354-5555**
Fax: **(718) 636-4444**

email: NEWYORKLAWYER@MSN.COM

June 4, 2021

**Via ECF:**

Honorable Allyne R. Ross
225 Cadman Plaza East
Brooklyn, NY 11201

*Re:*   *Express Freight Systems, Inc. v. YMB.*, **Case No. 20-cv-00186 (ARR)(LB)**

Honorable Justice Ross:

  This firm represents Defendant, YMB Enterprise Inc. and request a 60-day window to file an opposition to the motion for summary judgement contemplated by Plaintiff (ECF 72).

  Plaintiff has no cause of action whatsoever. There is no breach of contract, no damages, and the non-solicitation provision proposed by Plaintiff is null and void as a restraint on lawful trade. Besides, Plaintiff cannot maintain a viable cause of action to meet the threshold of diversity jurisdiction.

  Defendant YMB Enterprises Inc ("Defendant") is a freight carrier. Plaintiff Express Freight Systems Inc. ("Plaintiff") is a freight broker.

  In 2018, Defendant had a regular route transporting goods from New York City (NYC) to a facility in Northumberland, PA with at least three shipments per day, and an average of fifteen (15) dispatches per week, PA. In order to defray the cost of driving an empty vehicle back to NYC, Defendant sought to service freight en route from Northumberland, PA to NYC. Defendant utilized a website power.DAT.com, a marketplace where transportation brokers and carriers collaborate, to find suitable freight.

  At some time, Defendant learned that Furmano Foods ("Furmano") regularly shipped canned food from Northumberland, PA to NYC.

  Defendant sought out on power.DAT.com all available dispatches that left Northumberland, PA to NYC. Starting on June 22, 2018, Defendant began servicing Furmano Foods through Sunteck Transport Co Inc. ("Sunteck"), a transportation broker. From June 22, 2018 through July 24, 2018, Defendant serviced at least five dispatches for Furmano Foods, which was not enough to ensure that Defendant had enough freight to avoid traveling to NYC with empty vehicles.

On July 26, 2018, Defendant observed on DAT.com that Plaintiff sought carriers for the route going from Northumberland, PA to NYC. Defendant contacted Plaintiff and they executed a boilerplate service contract.

The boilerplate contract, provided for a clause restraining Defendant from doing direct business with Plaintiff's customers. The contract does not contain any clauses guaranteeing to Defendant either an exclusive route from Northumberland, PA to NYC or an X amount of business to Defendant. Parallel, the contract does not address whether Plaintiff can prevent the solicitation of business by Defendant with a costumer such as Furmano, with whom Defendant was well acquainted prior to knowing Plaintiff. The contract also does not address whether Furmano was already Defendant's "customer" per its prior service through other brokers to require Defendant to cease doing business with Furmano.  The contract also does not address whether Plaintiff could prevent Defendant from continuing doing direct business with Furmano for no consideration on its non-solicitation clause.

On July 26, 2018, Plaintiff offered Defendant its first dispatch to service Furmano. The next dispatch, Plaintiff did not offer to Defendant until September 13, 2018. In other words, for forty-eight (48) days after the first dispatch, Plaintiff did not offer a single dispatch to Defendant. Meanwhile, the evidence shows that between July 26, 2018 and September 12, 2018, Defendant had at least seventeen dispatches servicing Furmano, but offered Plaintiff only one dispatch. (That is because Plaintiff lures unsuspecting carriers into a contract with a non-solicitation clause to restrain the competition seeking access to businesses like Furmano).

Meanwhile, Defendant was in need of freight going from Northumberland to NYC. Each time that Defendant's vehicles left Northumberland emptyhanded constituted an economic hole ruining Defendant's affordability to maintain its route heading from NYC to Northumberland. From this economic standpoint, it became apparent that Defendant cannot rely on Plaintiff. In addition, Defendant also learned that Furmano had a habit of interspersing multiple brokers irregularly to manipulate the freight prices.

In mid-October 2018, Defendant received a message from Furmano to call them. Defendant was informed at that call that Furmano would no longer offer its freight through Plaintiff. Defendant feared that if they do not accept freight directly from Furmano they would lose the route. From a business standpoint, Defendant could not afford to lose the route.

On October 18, 2018, Defendant began servicing Furmano directly. At some point, Defendant learned that Furmano still utilizes Plaintiff and on December 17, 2018, Defendant ceased accepting direct dispatches from Furmano, despite the economic loss. However, Defendant continued receiving freight from Furmano through other brokers.

Plaintiff alleges that it suffered damages by Defendant, asserting in the complaint that "As a result of Defendant's underhanded tactics, Furmano has been doing business directly with <u>Defendant and has virtually ceased using Plaintiff' services</u>." (Underline added). However, the evidence reveals that this statement is a bald lie. Between October 18, 2018 through December 31, 2018, Plaintiff has serviced Furmano with at least twenty-two (22) dispatches. In addition,

the evidence shows that in 2020 Plaintiff received from Furmano at least one hundred and thirty-four (134) dispatches and in 2019 at least seventy-seven (77) dispatches; in comparison, Plaintiff received in 2018 at least one hundred eight-eight (188) dispatches, in 2017 one hundred and ninety-eight (198) dispatches, in 2016 thirty-one (31) dispatches, in 2015 eight-one (81) dispatches, in 2014 ninety-four (94) dispatches, and in 2013 eight (8) dispatches.  Moreover, these numbers lead to many conclusions, such as that the relationship between Plaintiff and Furmano were always inconsistent, and Plaintiff did not suffer any damages in 2018, 2019 or 2020. What needs to be emphasized, 2018 was the second-best year that Plaintiff had with Furmano in the number of dispatches received, despite the alleged breach of contract by Defendant. Likewise, in 2019 and 2020, Plaintiff had a similar number of dispatches with Furmano as it had in the prior years, 2014, 2015 and 2016.

Looking at the numbers, in 2017 (the year Plaintiff received the most dispatches with Furmano) Plaintiff had 198 dispatches and generated $217,502.25 in gross revenues. Meanwhile in 2018 (the second-best year Plaintiff had with Furmano) Plaintiff had 188 dispatches (10 fewer dispatches) and generated revenues $255,225.50 (an increase of $37,723.25). Given that in 2018, the year of the purported breach of contract, Plaintiff generated $37,723.25 more than it did in its best year—2017, Plaintiff cannot show that Defendant caused them any damages.

There are more facts that speak for themselves for dismissing this action and would require exceeding the three (3) page limit allowed for pre-motion letters. Such as, Plaintiff alleges, "…Defendant agreed to transport freight for various customers of Plaintiff based on agreements Plaintiff brokered with such customers." Discovery revealed no such agreements exist. Nonetheless, these incontrovertible facts speak for themselves and demonstrate that Plaintiff does not have any viable cause of action. Plaintiff's motion for summary judgment would be futile and a waste of time.

This action was merely brought for harassment purposes, to elbow Defendant.  Plaintiff had its delight now it is time to dismiss this case. Since Plaintiff desires to file a motion for summary judgment, Defendant will need sixty (60) days to file an opposition. The fact intensive nature of briefing summary judgment would require much time for submission in the format of L.R. 56.1 and supporting papers.

                                           Respectfully submitted,

                                           / s / Levi Huebner

                                           Levi Huebner
                                           *Attorneys for YMB Enterprise Inc.*