# LEVI HUEBNER & ASSOCIATES, PC

488 EMPIRE BOULEVARD, SUITE 100
BROOKLYN, NY 11225
TEL: (212) 354-5555
FAX: (718) 636-4444

EMAIL: NEWYORKLAWYER@MSN.COM

**Via ECF:**                                                                                    June 28, 2021

Honorable Magistrate Lois Bloom
225 Cadman Plaza East
Brooklyn, NY 11201

> *Re:*     *Express Freight Systems, Inc. v. YMB.*, **Case No. 20-cv-00186 (ARR)(LB)**

Honorable Magistrate Bloom:

     This firm represents Defendant, YMB Enterprise Inc. On June 21, 2021, Your Honor directed the Defendant to respond to Plaintiff's motion seeking sanctions [ECF 75] (the "Improper Motion[1]") regarding Defendant's response to a request for admissions.

     Prior to responding to the Improper Motion on the merits, Defendant seeks leave to file a cross-motion to suppress the edited transcript of the deposition dated January 18, 2021 because (1) Plaintiff failed to produce the transcript and marked exhibits to the witness after request of a copy of the deposition transcript with its marked exhibits be produced for review and correction pursuant to FRCP 30(e) (the requirement to allow the witness to review the transcript for errors), (2) the failure to produce the deposition transcript with its exhibits as relevant information under FRCP 26(e)(1) and should thus it shall be precluded pursuant to FRCP 37(c)(1), and (3) pursuant to FRCP 32(c) the transcript should have been provided to the 30(b)(6) witness. A cross-motion to suppress is relevant to Plaintiff's reliance on the transcript regarding its Improper Motion and summary judgment motion.

     Furthermore, the party who requests the admission bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without explanation, and in certain instances, permit a qualification or explanation for purposes of clarification. Requests for admissions are not intended for factual discovery that should be done through interrogatories and depositions. They are a cruder device because the party may accept, deny or object to facts phrased by the opposition. They exist to narrow the issues at trial where the parties' unambiguously agree. *Dash v. Seagate Tech. (US) Holdings, Inc.*, No. CV 13-6329 LDW AKT, 2015 WL 4257329, at *16 (E.D.N.Y. July 14, 2015). Plaintiff has not identified how its request for admissions serve to narrow the issues for trial.

     Moreover, Plaintiff's motion is not even actionable before trial, since Defendant is still within the safe harbor zone of FRCP 37(c)(2)(C) of having reasonable ground to believe that it might prevail on the matter either at summary judgment or trial.

---

[1] "Rule 37(c) applies only to a party" not his counsel. *Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009, 1014 (2d Cir. 1988) ("[W]e must infer from the . . . other subsections of Rule 37 expressly providing for the imposition of sanctions against a party's attorney that the drafters intended to omit attorneys from the coverage of subsection (c)."). In light of the foregoing, Plaintiff's Improper Motion is on its face sanctionable.

Separately, on June 1, 2021, [ECF 72] Plaintiff sought a pre-motion conference for summary judgement and "reimbursement of attorneys' fees and costs under FRCP 37(c)(2)" (In its letter, Plaintiff omitted addressing the request for admissions or sanctions of counsel). On June 4, 2021, the Court ordered, "plaintiff shall serve its motion no later than June 18, 2021; defendant's opposition . . . no later than July 9, 2021; plaintiff's reply. . . no later than July 16, 2021. The fully briefed motion shall be filed in accordance with chambers rules . . . This schedule may be altered only with permission of the Court." The Honorable Judge Allyne R. Ross, only granted Plaintiff leave to file a motion for summary judgment and Plaintiff was not granted leave to seek sanctions.

### Background

Defendant YMB Enterprises Inc ("Defendant") is a freight carrier. Plaintiff Express Freight Systems Inc. ("Plaintiff") is a freight broker.

In 2018, Defendant had a regular route transporting freight from New York City (NYC) to a facility in Northumberland, PA with at least fifteen (15) dispatches per week. To defray the cost of returning empty vehicles to NYC, Defendant sought freight en route from Northumberland to NYC and used a website power.DAT.com to find suitable freight, accepting all available dispatches leaving Northumberland to NYC. At some time, Defendant learned that Furmano Foods ("Furmano") regularly shipped canned food from Northumberland to NYC. Starting on June 22, 2018, Defendant began servicing Furmano through Sunteck Transport Co Inc., a transportation broker with only five dispatches, which were not enough dispatches.

On July 26, 2018, Defendant met Plaintiff on DAT.com. Plaintiff advanced a boilerplate service contract that was signed by Defendant. The boilerplate contract provided an illusory clause restraining Defendant from doing direct business with Plaintiff's customers. The illusory contract does not contain any clauses guaranteeing to Defendant either an exclusive route from Northumberland to NYC or an X amount of business to Defendant. Parallel, the illusory contract does not address whether Plaintiff can prevent the solicitation of business by Defendant with a costumer such as Furmano, with whom Defendant was acquainted prior to knowing Plaintiff. The illusory contract also does not address whether Furmano was already Defendant's "customer" per its prior service through other brokers to require Defendant ceasing doing business with Furmano. The illusory contract also does not address whether Plaintiff could prevent Defendant from continuing doing direct business with Furmano without consideration on its non-solicitation clause.  See *Zigler v. Featherstone Foods, Inc*., No. 20CV2462 (DLC), 2021 WL 149259, at *3 (S.D.N.Y. Jan. 15, 2021), *appeal dismissed*, No. 21-274, 2021 WL 1942324 (2d Cir. Mar. 29, 2021).

On July 26, 2018, Plaintiff offered Defendant its first dispatch to service Furmano. The next dispatch, Plaintiff did not offer to Defendant until September 13, 2018. In other words, for forty-eight (48) days after the first dispatch, Plaintiff did not offer a single dispatch to Defendant. Meanwhile, the evidence shows that between July 26, 2018 and September 12, 2018, Defendant had at least seventeen dispatches servicing Furmano, but offered Plaintiff only one dispatch.

Meanwhile, Defendant needed freight going from Northumberland to NYC. From this economic standpoint, it became apparent that Plaintiff was unreliable. In addition, Defendant also learned that Furmano had a habit of interspersing multiple brokers irregularly. In mid-October 2018, Defendant received a message from Furmano to call them. Defendant was informed at that call that Furmano would no longer offer its freight through Plaintiff. Defendant feared that if they

do not accept freight directly from Furmano they would lose the route. From a business standpoint, Defendant could not afford to lose the route.

On October 18, 2018, Defendant began servicing Furmano directly. At some point, Defendant learned that Furmano still uses Plaintiff and on December 17, 2018, Defendant ceased accepting direct dispatches from Furmano, despite the economic loss. However, Defendant continued receiving freight from Furmano through other brokers.

Plaintiff alleges that it suffered damages by Defendant, asserting in the complaint that "As a result of Defendant's underhanded tactics, Furmano has been doing business directly with <u>Defendant and has virtually ceased using Plaintiff' services</u>." (Underline added). However, the evidence reveals that this statement is a bald lie. Between October 18, 2018, through December 31, 2018, Plaintiff has serviced Furmano with at least twenty-two dispatches. Further, the evidence shows that in 2020 Plaintiff received from Furmano at least 134 dispatches and in 2019 at least seventy-seven dispatches. There is an abundance of facts that speak for dismissing this action and would require exceeding the three-page limit allowed for pre-motion letters.

## The Deposition Transcript is Edited

Plaintiff asserts that, Defendant admitted to requests for admissions that were previously denied. Every single request for admission was objectionable on the merits. For example, Request No. 11 asks, "Admit that subsequent to Defendant entering into the Agreement, Defendant was paid $41,000.00 from Furmano…" Defendant could not admit that since the records Plaintiff produced from Furmano shows that Defendant was only paid "$39,900." This discrepancy exists, although Defendant recorded a payment of $41,000, Defendant only received $39,900 and wrote-off one job of $1,100 as paid even though Defendant did not receive an actual payment from Furmano. The transcript has been edited to falsely admit receiving $41,000 from Furmano when the record cannot support such false admission.

Defendant requested from Plaintiff an opportunity to review the deposition transcript and sought its exhibits and Plaintiff refused. This is in defiance to FRCP 30(e), 32(c). The 30(b)(6) witness has a language barrier, since English is not his primary language, and often the witness's verbal answers are distorted on print. Plaintiff should have afforded Defendant an opportunity to review the deposition transcript and authenticate it prior to claiming the transcript as evidence.

Moreover, Plaintiff edited the transcript to omit the very objections that Defendant made to form on questions that Plaintiff claim was admitted. These objections were justified to questions since Defendant was asked to either interpret agreements or the lack thereof (the meaning of an agreement is a question of law), assume a relationship between Furmano and Plaintiff (that is not within the scope of Defendant's knowledge), and that Defendant offered a full settlement to Plaintiff prior to engaging in litigation (settlement discussions are not admissible).

Furthermore, pursuant to FRCP 26(e)(1), Plaintiff was under a continuous duty to supplement its document production of the deposition transcript with its marked exhibits. Plaintiff's failure to timely produce these documents require preclusion pursuant to FRCP 37(c)(1).

## Conclusion

Wherefore Defendant requests that Plaintiff's Improper Motion be denied and/or removed from the docket, and if Plaintiff's Improper Motion is allowed to proceed forward, a thirty-day extension of time for Defendant to file an opposition to the Improper Motion [ECF 75]. The Court should also grant leave for Defendant to file a cross-motion to suppress the deposition transcript.

      Respectfully submitted,

      / s / Levi Huebner
      Levi Huebner

*Attorneys for YMB Enterprise Inc.*